## Stoops *versus* Blackford.

Before the Act of 11th April, 1848, a married woman might sell or mortgage her real estate, if there was no coercion, by uniting with her husband in the conveyance, and separating from him in the acknowledgment of it.

The separate deed of a married woman conveying her real estate, is void.

Under the Act of 1848, she may authorize her husband to act for her by an instrument separately acknowledged as that act requires.

An assignment of a mortgage by a married woman, or a pledge of it for her husband's debts, without her husband joining in the instrument, is void.

ERROR to the District Court of *Allegheny county*.

This was a *scire facias* on a mortgage brought by Matilda Blackford's executor against William Stoops. The mortgage was dated the 1st day of April, 1852, and was given by Stoops to Mrs. Blackford, who was at the time a married woman, to secure $2000 which she loaned to him, and being money which she owned in her own right.

On the 7th January, 1853, Dr. Blackford, the husband of the plaintiff's testatrix, purchased an interest in a foundry from a party who had bought from Nimick & Co. with an agreement to take up the notes which had been given to Nimick & Co. for the purchase-money. To enable him to take up these notes Mrs. Blackford assigned the mortgage of Stoops as collateral security to Nimick & Co., who delivered up to Dr. Blackford the notes of the other party from whom he had purchased. This assignment was signed and sealed by Mrs. Blackford alone, and a separate acknowledgment before an alderman of the city of Pittsburgh. To the assignment there was an agreement annexed, signed by Mrs. Blackford and by Nimick and Co., that so long as no default was made in the payment of the notes of her husband to secure which it had been assigned, she should have the full use and control of the mortgage, receive the interest and change the security, and Nimick & Co. agree to reassign the mortgage as soon as Dr. Blackford shall give an approved endorser on the notes.

Mrs. Blackford died shortly after, having first made a will in which she appointed Samuel R. Williams, the plaintiff in this suit, her executor and testamentary guardian of her children by a former husband. He notified Stoops not to pay the mortgage to Nimick & Co., and also notified Nimick & Co. to proceed against Dr. Blackford for their debt, and of his intention to contest the assignment. Dr. Blackford was then still the owner of the interest in the foundry for which the debt was incurred.

On the 2d April, 1854, the plaintiff issued a *scire facias* on the mortgage; and on the same day Stoops paid over the money to Nimick & Co., and interposed the assignment as a defence to this action.

[Stoops *v.* Blackford.]

On the trial in the court below, by consent of counsel, the court (WILLIAMS, J.) instructed the jury, *pro forma*, that the plaintiff was entitled to recover, reserving the point as to the validity of the assignment by Mrs. Blackford. .

The jury found for the plaintiff $2255.

On a subsequent day, after argument of the reserved point, Judge WILLIAMS entered judgment for the plaintiff, and delivered the following opinion :—

. " One of two constructions, it seems to me, should be given to '.the act to secure the rights of married women.' It either confers on a *feme covert* all the rights, and clothes her with all the powers of a *feme sole* in respect to her separate estate, and gives to her the same general and unqualified power to make contracts of every description, and subjects her to all the liabilities of a *feme sole* in relation to such contracts, and in this respect ' abrogates the marital relation with its rights and duties;' or it merely enables her to ' own, use, and enjoy her estate as her own separate property,' with power to make contracts indispensably necessary for its management and preservation, but without power to sell her real estate unless with her husband's consent—to acquire property ' by deed of conveyance or otherwise,' and to charge the property so acquired, but not her other estate, with the payment of the purchase-money—and subjects her estate to liability for her torts, for debts contracted before marriage, for liabilities necessarily incurred in the management of her estate, and for necessaries for the support of her family ; and forbids the sale, conveyance, mortgage, transfer, or encumbrance of her estate by her husband, unless her written consent, duly acknowledged before a judge of the Court of Common Pleas, is first had and obtained; leaving her, in all other respects, under the protection and disability of the common law. The first, which is the more literal construction of the act, seems to have been the one adopted by the court in Cumming's Appeal, 1 *Jones* 272. The objection to this construction is that it sticks too much in the bark, and would defeat the purpose and intention of the act. The other construction, if it be not as literal, is more in accordance with its spirit and design, which was to secure the rights of married women, and is the one adopted by the court in Patterson *v.* Robinson, and Mahon and Wife *v.* Gormly and Wife, 12 *Harris* 80. If the literal be the true construction of the act, the testatrix had power to pledge the whole or any portion of her separate personal estate as security for the payment of the debts of her husband; and the assignment of the mortgage, for this purpose, was valid and binding. But the latter, as more in accordance with the spirit, must now be regarded as the settled construction of the act. And it does not authorize a married woman to enter into any contract of suretyship for her husband, or to pledge, transfer, or assign her

[Stoops v. Blackford.]

separate personal estate as security for the payment of her husband's debts; nor does it authorize the mortgage, transfer, or assignment of the wife's estate by the husband, *except in the mode prescribed by the act.* The mortgage in this case was not transferred or assigned in accordance with the provisions of the statute which require the wife's written consent, duly acknowledged before one of the judges of the Common Pleas, to be first obtained; and in no other manner had the testatrix power to pledge or assign it, or to consent to its transfer by her husband, as security for the payment of his debt. The assignment was not such a contract or engagement as the act enables a married woman to make; and, for this reason, it is invalid. If a married woman is not authorized by the statute to endorse a note, or to become security in a bond or other obligation, for her husband's debt, by what provision of the act, other than that which requires her written consent, duly acknowledged, to be first had, is she enabled to pledge, transfer, or assign any portion of her personal estate, or to consent to its transfer or encumbrance by her husband as security for the payment of his debts? What is the real and only difference in the nature and essence of these contracts? By the first, she incurs a personal·responsibility under and in discharge of which a portion or the whole of her estate may be taken. By the second, no personal liability is incurred, but the specific property pledged or assigned may be applied in discharge and satisfaction of the engagement. But if she may pledge a portion, she may pledge the whole of her personal estate, and, in this respect, she has the unqualified power of a *feme sole.* She *may* make contracts other than those which are necessary for the management and preservation of her estate. She may enter into engagements, in disregard of the salutary provisions of the act which require her written consent, duly acknowledged, to be first had, by which her whole personal estate may be sacrificed for her husband's debts; and it will be of but little avail that her power to endorse or to become surety is denied, if she is at liberty to pledge or assign her separate personal estate as security for the payment of her husband's debts.

"It does not help the defendant's case, in my opinion, that the testatrix is shown to have assigned the mortgage with her husband's consent. Where one becomes the endorser or surety of another, or when *choses* in possession or in action are transferred or pledged as security for another's debt, the law presumes that it is done with the debtor's consent and at his request. And in every assignment or pledge of the wife's property for her husband's debt the irresistible presumption would be, unless rebutted by direct and positive proof, that it was done with the husband's consent, if not at his request; and so the jury would find. The act was intended for the protection of married women, to prevent

their estates from being squandered by their husbands, or taken in execution for their debts. To hold the wife's assignment or pledge of her personal property binding and operative when made with the husband's consent, and of no force or validity when made against his consent, would be an idle and useless distinction. The husband's consent will always be presumed, and, in point of fact, will always be given. But the husband's consent to the transfer of his wife's property as security for the payment of his debts affords no protection to the wife; and, to guard against his importunities, the act requires that the wife's written consent, duly acknowledged, shall be first obtained.

"It is plain to my mind that the act should be construed so as either to give to a *feme covert* the unqualified power of a *feme sole* to make contracts of every description, or so as to limit and restrict her power, in this respect, to contracts indispensably necessary to the management and preservation of her separate estate, and to engagements for the sale, mortgage, transfer, or encumbrance of her property where her written consent, duly acknowledged as required by the act, is first had and obtained. Either construction furnishes a rule that is simple and of easy application in practice, but the latter best accords with the spirit and design of the act. But whatever the construction adopted, it should be inflexibly and resolutely maintained. There should be no cases forming an exception to the rule. If there are, it will beget the same confusion and uncertainty, and be followed by the same practical evils that have grown out of the somewhat unsteady and conflicting decisions on the statute of frauds and the statute of limitations. I am, therefore, unwilling to take the initiative in making this case an exception to the power of a married woman to make contracts, as her power is defined in the construction given to the act, in the cases not yet reported, and to which reference has been made. The defendant in this case was notified by the executor not to pay the mortgage, and he paid it in his own wrong. He might have filed a bill of interpleader against the parties, or, after suit brought, he might have paid the money into court, and obtained an order to interplead. If he paid the assignees without requiring an indemnity, it was his own folly. Without notice of any kind, a prudent man, looking merely to the terms and conditions of the assignment, would hardly have paid the assignees and taken their acknowledgment of satisfaction, without making some inquiry of the mortgagee or her representative.

"Let judgment be entered for the plaintiff on the verdict for the amount found by the jury, on payment of the verdict fee."

The defendant sued out this writ and assigned for error, that the court erred in entering judgment for the plaintiff on the question reserved.

[Stoops v. Blackford.]

*G. P. Hamilton* and *MacConnell*, for plaintiff in error, contended that Mrs. Blackford had power to assign and dispose of the mortgage, and to pledge it for a debt of her husband. They cited Peck *v.* Ward, 6 *Harris* 509; Ulp *v.* Campbell, 7 *Harris* 361; Miner *v.* Graham (not reported); *Sto. Eq.* §§ 1397, 1399, 1372–3; 5 *Madd.* 418; Duffy *v.* The Ins. Co., 8 *W. & Ser.* 433; Rogers *v.* Fales, 5 *Barr* 155; *Sto. Eq.* § 1374; Chambers *v.* Spencer, 5 *Watts* 404; McGransey's Appeal, 14 *Ser. & R.* 64; 19 *E. C. L.* 665; 9 *Id.* 137; Craft *v.* Pownell, 4 *Rawle* 256; Roberts *v.* Halstead, 9 *Barr* 32; Prescott *v.* Hall, 17 *J. R.* 284; Briggs *v.* Dorr, 19 *Id.* 95.

On the authorities cited above, the assignment of the wife was good by way of appointment.

This transaction has none of the characteristics of a contract. The wife did not undertake to answer generally for the default of her husband in paying his notes to Nimick. It was a mere pledge, consummated by delivery of a part of her personal estate, to stand as security for the performance of her husband's engagements.

The Act of 1848 has nothing to do with the case. It neither helps nor harms it. It vests her with absolute power over her estate, without prescribing any mode of alienating or disposing of it; leaving the exercise of that power to be regulated by the then existing laws.

*Penny* and *Sterrett*, for defendant in error.—The will of a *feme covert* is in the keeping of her husband. In law she speaks and acts through him : McClure *v.* Douthitt, 6 *Barr* 415. The common law, although somewhat relaxed, was restored to its former strictness by the case of Marshall *v.* Rutton, 8 *T. R.* 547; *Sto. Eq.* § 243; 2 *Bright's Hus. & W.* 27. In this state, where not relaxed by statute, she stands under the protection of the common law : Thomas *v.* Folwell, 2 *Wh.* 16. Even marriage settlements have been construed with great strictness, evincing the well settled policy of the law : Lancaster *v.* Dolan, 1 *Rawle* 248; Wallace *v.* Coston, 9 *Watts* 137; Cochran *v.* O'Hern, 4 *W. & Ser.* 100; Chrisman *v.* Wagoner, 9 *Barr* 473; Wetherill *v.* Mecke, *Bright. Rep.* 140.

The Act of 11th April, 1848, does not enlarge her power to make contracts, or to do any act which may deprive her of the property it was designed to secure to her. It enlarges her rights, not her powers: Bennett *v.* Smith, 10 *Am. L. J.* 138; Mahon *v.* Gormley, 12 *Harris* 80. The statute is in derogation of the common law, and therefore strictly construed. She may enjoy, but not alien, without her husband joining: Peck *v.* Ward, 6 *Harris* 508: and cannot even charge it with a debt, except for the purchase-money : Patterson *v.* Robinson, 3 *Am. L. Reg.* 241.

[Stoops *v.* Blackford.]

If the act gives no power of alienation to her alone, and none such existed before, whence is the power of " appointment" derived ?  This would be to evade and defeat the act itself : Hays *v.* Perkins, 2 *Am. L. Reg.* 200.

It is contended that the mortgage was personal property, and that she is not restrained to any particular mode of alienation in regard to that.  In Philips *v.* The Bank of Lewistown, 6 *Harris* 402, it is decided that a mortgage is in *form* a conveyance of land, and an assignment of the mortgage is another *formal* conveyance of the land.  She cannot mortgage her land unless her husband join.  Every reason exists for holding to as strict an execution of the statute in an assignment as in the making of a mortgage.

The opinion of the court was delivered by
Lewis, C. J.—Under the law, as it stood before the Act of 1848, a married woman might sell or mortgage her real estate with the consent of her husband, provided there is no coercion. But to secure the one, and at the same time to provide against the other, she is required to unite with him in the conveyance, and to separate from him in the acknowledgment of it: 6 *Harris* 506 ; 7 *Harris* 361 ; 1 *Casey* 81 ; *Id.* 144 ; 12 *Harris* 18.   The separate deed of a married woman conveying her real estate is void: 1 *Casey* 326.   Under the Act of 1848, she may authorize her husband to act for her ; and this must be done by an instrument separately acknowledged as that act requires.   An assignment of a mortgage owned by her may be made either way.   But the assignment on which the defence rests was not made in either of these forms.  As it is a pledge for her husband's debts, it is not within any of the exceptions expressed or implied in the Act of 1848.   It follows that the judgment of the District Court was correct.

Judgment affirmed.